IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

George Edmund Almodovar,           )
                                   )
                   Petitioner,     )        Civil Action No. 3:09-257-DCN -JRM
                                   )
v.                                 )
                                   )        **REPORT AND RECOMMENDATION**
                                   )
Willie L Eagleton, Warden,         )
                                   )
                   Respondent.     )
_____)

       At the time of the filing of the petition in this case, the *pro se* Petitioner, George Edmund

Almodovar ("Almodovar"), was an inmate at the South Carolina Department of Corrections[1] serving

concurrent sentences of thirty (30) years for kidnapping and armed robbery, and five (5) years for

conspiracy and possession of a firearm during a crime of violence.  Almodovar asserts that he is

entitled to a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Respondent filed a motion for

summary judgment on August 5, 2009, supported by copies of the state court record.  Because

Almodovar is proceeding *pro se*, an order pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir.

1975) explaining to him his responsibility to respond to the motion for summary judgment.

Almodovar filed his response on December 15, 2009.

---

[1]According to Almodover's <u>Roseboro</u> response he is presently on parole and living in
North Carolina.

**Background and Procedural History**

At approximately 8:40 on the morning of Sunday, April 23, 1995, three masked gunmen robbed a Ryans Steak House located on St. Andrews Road in Lexington County. In addition to observing the robbers, witnesses recalled seeing a blue Chevrolet Lumina in the vicinity and were able to give investigating officers a partial license plate number. Investigation revealed that Almodovar had rented a matching vehicle from Avis on April 22, 1995. Within several hours of the robbery three Hispanic men returned the Lumina to Avis and exchanged it for a Toyota Camry. Almodovar and Robert Martinez ("Martinez") were developed as suspects. Eventually, they were questioned, residences were searched, and they were arrested.

Almodovar and Martinez proceeded to trial beginning November 14, 1995. Almodovar was represented by John Cheatham, Esquire. Martinez was represented by Elizabeth C. Fullwood, Esquire. The jury found both defendants guilty. Almodovar did not file a timely notice of appeal.

Almodovar filed an application for post-conviction relief ("PCR") on June 28, 1996. (App. 799).[2] An evidentiary hearing was held on February 26, 1998. (App. 835). Almodovar was represented by William Gorski, Esquire. Almodovar testified in support of his application. In addition, he presented testimony from Iris Quinones, Iris Carrillo, Juan Carrillo, Deidre Martin, David Mac Dougall, and Jim Sangster. Mr. Cheatham was called as a witness by the State. The PCR court filed an order of dismissal on May 19, 1998 finding that Almodovar had not waived his right to direct appeal, and that he was entitled to a belated appeal pursuant to state procedure (*see* White v. State, 263 S.C. 110, 208 S.E.2d 35 (1974)), but denying his other claims for relief. (App. 925).

---

[2]The record in this case is voluminous. A three volume appendix was prepared for appeal following denial of Almodovar's PCR. It is referred to as "App. ___."

On May 29, 1998, Almodovar filed a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCiv.P. A hearing was held on June 23, 1998. (App. 933). At that hearing Martinez testified that on the day before the robbery, he had made a duplicate key for the Lumina rented by Almodovar and used the vehicle without Almodovar's knowledge to commit the robbery with two other individuals. In effect, Martinez exonerated Almodovar. The PCR court denied the motion finding that Almodovar had not shown that the "newly discovered evidence" could not have been presented at the first PCR hearing through the exercise of due diligence. (App. 955).

Almodovar, through counsel, filed a motion of intent to appeal dated July 2, 1998. The record shows that an Anders[3] brief, dated January 27, 1999 was filed by the South Carolina Office of Appellate Defense raising the following issue fore belated appeal:

> The lower court erred in allowing the state to exercise peremptory challenges in a discriminatory manner.

Further, a petition for writ of certiorari of like date was filed raising the following issues:

> 1. Did the post-conviction relief court properly rule that petitioner did not voluntarily and intelligently waive this right to a direct appeal in the case?
>
> 2. Was trial counsel ineffective in failing to fully investigate the case prior to trial?
>
> 3. Was trial counsel ineffective in failing to make an opening argument in the case?

(App. 956).

Counsel filed an amended petition for writ of certiorari adding the after discovered evidence claim:

> Did the lower court err in denying petitioner's allegation that post-conviction relief should be granted based on newly discovered evidence?

---

[3] Anders v. California, 386 U.S. 738 (1967).

(App. 1115).

Despite the fact that he was represented by counsel, Almodovar filed a "Petition for Writ of Certiorari *Pro se* Brief" raising the following issues:

I:      Trial counsel was ineffective in failing to fully investigate and prepare for the case; in failing to interview, contact or subpoena witnesses.

II.     Trial counsel was ineffective in failing to object to prosecutor's improper arguments which denied petitioner a fair and impartial trial.

III.    Trial counsel was ineffective for failing to file a timely appeal.

IV.     The lower court erred in denying petitioner's PCR on the grounds of newly discovered evidence.

V.      The lower court, PCR counsel, and Appellate counsel denied petitioner of due process and equal protections of law by their actions and inactions.

(App. 969).

On May 25, 2001, the South Carolina Supreme Court issued an order granting the petition for writ of certiorari with respect to the PCR court's ruling that Almodovar did not waive his right to direct appeal. The court performed an <u>Anders</u> review and dismissed the direct appeal pursuant to Rule 220(b)(1), SCACR.[4] The Supreme Court denied certiorari with respect to Almodovar's claims that trial counsel was ineffective for failing to fully investigate the case and for failing to make an opening argument at trial. However, the Supreme Court granted certiorari as to Almodovar's claim that the PCR court erred in not granting him a new trial based on newly discovered evidence. Briefing was ordered. Almodovar, through counsel, filed a brief dated July 24, 2001 on the after discovered evidence issue. The State filed a brief on October 8, 2001. The Supreme Court remanded

_____

[4]The Supreme Court noted that Almodovar submitted a *pro se* brief with respect to the direct appeal, but it is not a part of the record before this Court.

the case to the circuit court to conduct a "full hearing" on Almodovar's motion for a new trial based on after discovered evidence. The Court reasoned that due diligence would not have led PCR counsel to interview Martinez prior to the PCR hearing. *See* Almodovar v. State, Mem.Op.No. 2002-MO-007 (S.C. filed January 28, 2002)[5].

After remand, a hearing was held November 12, 2003. Almodovar continued to be represented by Mr. Gorski. (Supp.App. IV). Almodovar and Martinez both testified. Martinez repeated his testimony from the earlier hearing that Almodovar was not involved in the robbery. Martinez further testified that he had the duplicate key made at a "hardware store." (Supp.App. IV, 49). At the conclusion of the hearing the court ordered that the record remain open so that the issue of the duplicate key could be explored. At the hearing Judge Keesley questioned whether a duplicate key for the automobile could have been made at a hardware store because it contained a computer chip.

The hearing was resumed on December 8, 2004 over Almodovar's objections. (Supp.App., p. 1 and Supp.App. V). Mr. Gorski was relieved as counsel at Almodovar's request, and Almodovar

_____

[5]As discussed below, the case was heard by the Honorable William P. Keesley, Circuit Court Judge, on remand. The case returned to the appellate courts after denial of relief. Another appendix was prepared in connection with that appeal. The record of these proceedings is somewhat confusing. There are five separate volumes of this appendix. The first is designated "Appendix" and the undersigned will refer to it as "Keesley App. ___" to differentiate it from the three volume appendix filled with the appeal from the original PCR hearing. The Keesley App. contains a transcript from the hearing held on December 8, 2004 after remand, together with exhibits and Judge Keesley's order denying the motion for a new trial. A "Supplemental Appendix," hereinafter "Supp.App. ___," to the Keesley App. contains a second copy of the transcript from December 8, 2004. A "Supplemental Appendix III," hereinafter "Supp.App. III ___" contains copies of various pleadings filed before and after the Supreme Court remanded the case for a full hearing. A "Supplemental Appendix IV," hereinafter "Supp.App. IV, __" contains a copy of the transcript from the first hearing before Judge Keesley held November 12, 2003. Finally, "Supplemental Appendix V, hereinafter "Supp.App.V __," contains copies of *pro se* pleadings dated December 8, 2004 as well as copies of the indictments of conviction.

5

proceeded *pro se*. (Supp.App. pp. 74-75). The State introduced evidence refuting Martinez's testimony that he had the key made at a hardware store. An employee of Herndon Chevrolet testified that special equipment was necessary to produce a duplicate key which would start the vehicle in question because it had an anti-theft computer chip in it, and that the cost was $29.56 for such a duplicate key. (Supp.App. 99-125).

On January 9, 2005 Judge Keesley issued an order summarizing the procedural history of the case and the testimony presented relevant to the motion for a new trial. The motion was denied. (Keesley App., 133). Almodovar's motion to amend or alter the judgment was denied on December 27, 2006. (Keesley App., 148).

Appeal was by way of a <u>Johnson</u>[6] petition filed by the South Carolina Commission on Indigent Defense raising the issue of after discovered evidence. Almodovar filed a *pro se* response which included a motion to strike a portion of the <u>Johnson</u> petition. By order of November 19, 2008, the motion to strike and the petition for writ of certiorari were denied. The Remittitur was returned on December 5, 2008.[7]

### Grounds for Relief

In his present petition, Almodovar asserts that he is entitled to a writ of habeas corpus on the following grounds:

> **Ground one**: Ineffective assistance of counsel in violation of Petitioner's 5, 6, and 14 Amendment of U.S. Constitution and established law.

---

[6]<u>Johnson v. State</u>, 364 S.E.2d 201 (S.C. 1988); *see also* <u>Anders v. California</u>, 386 U.S. 738 (1967).

[7]Despite the fact that Almodovar's conviction became final in late 1995, Respondent concedes that the present petition does not violate the Anti-Terrorism and Effective Death Penalty Act statute of limitations. (Res.Mem., 27).

Supporting Facts: Trial counsel was ineffective in failing to fully investigate and prepare for the case, failing to interview, contact and subpoena witnesses, object to prosecutor's improper arguments which denied petitioner a fair and impartial trial, failing to file a timely appeal, failure to articulate a 4th Amendment violation. Petitioner was also denied effective assistance of Appellate counsel on appeal from the denial of his post-conviction application.

**Ground two:** Denial of new trial based on after discovered evidence of actual innocence in violation of 14 amendment of U.S. Constitution.

Supporting facts: Petitioner's co-defendant came forward and testified that he had committed the crime for which Petitioner was jointly convicted. After several inordinate delays and several hearings being held over a period of 10 years after remand from the Supreme Court and decision rendered by the lower court motion for a new trial based on after discovered evidence was denied. Neither Petitioner nor his co-defendant testified at trial. Petitioner was extremely prejudiced by the passage of time, procedural irregularities and PCR Court errors and abuse of discretion by the Court interjection of its own opinion into the matter and questioning the witness at the hearing.

**Ground three:** Denial of a fair trial and due process of law by the trial court and prosecution in violation of 4, 5, 6 and 14 Amend. of the U.S. Const.

Supporting Facts: Failure to disclose Brady material which prove that someone else committed the crime; denial of directed verdict due to lack of evidence to support the conviction; Court's denial of additional instructions on the charge of circumstantial evidence. As well as counsel's failure to subject the prosecutor's to a minimal adversarial test, which extremely prejudiced the Petitioner.

**Ground four:** Denial of due process and equal protection of the law due to the many procedural irregularities that took place throughout judicial process in violation of 5, 6, and 14th amendment to U.S. Constitution.

Supporting facts: (1) the trial court lacked jurisdiction to convict and sentence petitioner due to procedural violation of S.C. Law and SCRCrimP, which create a state created liberty interest. (2) Inordinate delays in the state appeal process of 10 years substantially prejudiced petitioner's due to passage of time and erosion of his witnesses memory; (3) violation of and failure to comply with SCRCP and S.C. Statutory law which create a State created liberty interest or entitlement for postconviction relief applicant' such as Petitioner, as well as at the indictment and trial stages of the proceedings. Also during the appeal process wherein Appellate counsel failed to produce an accurate record for review of documents that were introduced into the record at the PCR hearing, of which counsel was made aware of but refused to correct despite time and opportunity.

**Discussion**

Since Almodovar filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). *See* Williams v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that

principle to a new context where it should apply.

*Id.* at 1519-20.  Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521.

**A. Procedural Bar**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts.  The two theories rely on the same rationale.  The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

**1.    Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions.  Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States."  The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A)  the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i)  there is either an absence of available State corrective process; or
> >
> > (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3)  A State shall not be deemed to have waived the exhaustion

requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.  *See* O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

The exhaustion doctrine existed long before its codification by Congress in 1948.  In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. *See* SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976).  The second avenue is by filing an application for post-conviction relief ("PCR").  See S.C. Code Ann. § 17-27-10 *et seq.*  A PCR applicant is also required to state all of his grounds for relief in his application.  *See*, S. C. Code Ann. § 17-27-90.  A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal.  Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court.  If the PCR court fails to address a claim as is required by

10

S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. <u>Marlar v. State</u>, 375 S.C. 407, 653 S.E.2d 266 (2007). A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[8] Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." <u>Joseph v. Angelone</u>, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, <u>Patterson v. Leeke</u>, 556 F.2d 1168 (4th Cir. 1977) and <u>Richardson v. Turner</u>, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. *See* <u>Rose v. Lundy</u>, *supra*.

---

[8]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. <u>See</u> discussion below on procedural bypass.

### 2. Procedural Bypass[9]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and

---

[9]This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, *supra*, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); *see also* Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. *See* Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3.       Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4.       Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances**.** Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the

claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocence.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), cert. denied, 485 U.S. 1000 (1988). Because a petitioner has no constitutional right to counsel in connection with a PCR application and/or an appeal from the denial thereof, he cannot establish cause for procedural default of a claim by showing that PCR counsel was ineffective. Wise v. Williams, 982 F.2d 142, 145 (4th Cir. 1992) cert. denied, 508 U.S. 964 (1993). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocence as to his guilt, *Id.*, or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5. Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996).

Respondent asserts that several of Almodovar's claims were not properly raised in state court and are, therefore, procedurally barred. Almodovar's claim that his trial counsel was ineffective for not raising a Fourth Amendment objection to the search of his mother's residence was not raised and addressed in the PCR. Although Almodovar raised a claim of ineffective assistance of counsel for failing to object to the Solicitor's allegedly improper jury arguments in his *pro se* brief, South Carolina does not permit hybrid representation and the claim would not have been considered. Insofar as Almodovar asserts that his attorney was ineffective on direct appeal, the claim is barred because he failed to raise it in the PCR process. In Ground 3 of the present petition, Almodovar raises several issues under the general argument of the denial of a fair trial and due process (Brady violation, denial of directed verdict based on insufficient evidence, and failure to charge requested jury instruction on circumstantial evidence). These are direct appeal issues which were not raised at the proper time and are therefore barred.

**B. PCR Procedure**

In his second ground for relief, Almodovar asserts that he "was extremely prejudiced by the passage of time, procedural irregularities and PCR court errors and abuse of discretion by the [PCR] Court['s] interjection of its own opinion into the matter and questioning the witness at the [PCR] hearing."[10] Also in his fourth ground for relief, Almodovar alleges a "violation of and failure to comply with SCRCP and S.C. Statutory law which create a State created liberty interest or entitlement for post-conviction relief applicant' such as Petitioner." Almodovar's claims that there were defects or irregularities in the PCR process, including a failure to follow state procedure and statutory law, are not cognizable as habeas claims.

Federal habeas courts "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the grounds that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Therefore, a challenge to a state's post conviction relief process, including alleged errors, defects, or irregularities in the process cannot provide a basis for habeas relief. Wright v. Angelone, 151 F.3d 151, 158 (4th Cir. 1998) and Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988).

**C. Violation of State Law**

Almodovar also appears to allege in ground four a violation of South Carolina law and procedure "at the indictment and trial stages of the proceedings." Such claims are likewise unavailable for habeas relief. Unless Almodovar can point to specific constitutional protections which were denied him at the indictment and trial stages of his case, he may not obtain relief. Chance

---

[10]At the first PCR hearing, the court raised the issue of whether a duplicate ignition key for the Lumina could have been readily made at a hardware store.

v. Grundler, 537 F.2d 1212 (4th Cir. 1976).

### D. Ineffective Assistance of Counsel

In Grounds 1, 3, and 4 of the present petition, Almodovar states various claims of ineffective assistance of counsel. None of these claims entitle him to relief.

#### 1. Ineffective Assistance of Trial Counsel

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the

17

> reasonableness of counsel's challenged conduct on the facts of the
> particular case, viewed as of the time of counsel's conduct. . . the court
> must then determine whether, in light of all the circumstances, the
> identified acts or omissions were outside the <u>wide</u> <u>range</u> of
> professionally competent assistance. (Emphasis added).

<u>Strickland</u> at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the <u>Strickland</u> test. *See* <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

### a. Failure to Investigate

Almodovar asserts that his trial attorney failed to properly investigate his case. In this regard Almodovar argues that counsel failed to contact, interview and subpoena witnesses. This claim was raised in the PCR court and rejected in the PCR court's order of dismissal.

An attorney has a duty to make a reasonable factual and legal investigation to develop appropriate defenses. <u>Sneed v. Smith</u>, 670 F.2d 1348 (4th Cir. 1982). The reasonableness of the investigation is evaluated by the totality of the circumstances facing the attorney at the time. <u>Bunch v. Thompson</u>, 949 F.2d 1354 (4th Cir. 1991), *cert. denied*, 505 U.S. 1230 (1992). The Courts recognize limits to investigation based on time, resources, and relevance and conclude that "<u>Strickland</u> does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." <u>Green v. French</u>, 143 F.3d 865, 892 (4th Cir.

1998), *abrogated on other grounds* by <u>Williams v. Taylor</u>, 529 U.S. 362 (1998). A decision not to investigate a particular avenue of defense is assessed by the same standard of "reasonableness in all the circumstances" by which an attorney's performance is measured in other areas. <u>Strickland</u>, 466 U.S. 690-91. A petitioner asserting a claim of ineffectiveness of counsel in failing to investigate must make a showing that the failure was prejudicial. Generally, the failure to investigate and present a potential alibi witness supports a claim of ineffective assistance of counsel. However, at the PCR hearing, the petitioner must present evidence establishing what the witness would have said at trial. <u>Bassette v. Thompson</u>, 915 F.2d 932 (4th Cir. 1990), *cert. denied*, 499 U.S. 982 (1991).

The record reflects that even though Almodovar did not testify at his trial he did presented a defense which included an alibi offered by his girlfriend, Deidre Martin. Martin also testified at the PCR hearing as well as Almodovar's mother, sister, brother, and two private investigators. The private investigators opined that Almodovar's defense would have benefitted had counsel hired an investigator. Almodovar also testified at the PCR hearing. The witnesses generally testified that Mr. Cheatham did not freely communicate with them. The PCR court found that counsel adequately investigated the case and that he had access to the investigation performed by Martinez's investigator. Further the court found that Almodovar was not prejudiced for failing to call the witness he identified. (App. 928-929). Notably, Almodovar stated on the record at trial that there were no further witnesses he wished to present. (App. 685 and 928).

### b. Failure to Require "Minimal Adversarial Test"

In Ground 3 Almodovar asserts that his trial attorney failed "to subject the prosecutors'(sic) to a minimal adversarial test." This claim is a general allegation of dissatisfaction with counsel's performance and it was not specifically raised in the PCR. The record reflects that Mr. Chatham

cross-examined the State's witnesses and presented an alibi defense.

### c. Failure to File Direct Appeal

Almodovar asserts that his trial attorney was ineffective because he failed to file a direct appeal. This claim is moot because Almodovar was granted a belated appeal in which he raised a challenge to discriminatory exercise of peremptory challenges by the State at jury selection.

### d. Ineffective Assistance of Counsel on Direct Appeal

Although it is not clear from the petition, Almodovar appears to assert that his attorney was ineffective in presenting and arguing claims in his belated direct appeal. The right to effective assistance of counsel extends to direct appeal. <u>Pennsylvania v. Finley</u>, 481 U.S. 551 (1987).

This issue was not addressed in state court and Almodovar has not identified specific direct appeal issues, other than the ones discussed herein, to support his claim.

### e. Ineffective Assistance of PCR Counsel and PCR Appellate Counsel

In Grounds 2 and 4, Almodovar asserts that his PCR counsel and his PCR appellate counsel were ineffective. There is no constitutional right to an attorney in a state PCR proceeding nor or appeal from the denial of a PCR application. <u>Coleman v. Thompson</u>, 401 U.S. 722 (1991). Thus such claims are not cognizable and are specifically excluded by statute. *See* 28 U.S.C. § 2254(i).

### E. Newly Discovered Evidence

As discussed above after the PCR application was denied, Almodovar made a motion to amend the order of dismissal pursuant to Rule 59(e), SCRCP, based on newly discovered evidence, i.e., Martinez's statement that he committed the robbery with two friends and that Almodovar was not involved. Eventually, the South Carolina Supreme Court ordered a full evidentiary hearing on the claim. The hearing was held on November 12 and December 8, 2003. The PCR court denied

Almodovar's request for a new trial. (Keesley App., 148).

The existence of "after-discovered evidence" may entitle a defendant to a new trial in state court or allow for a successive PCR in state court. Under South Carolina procedure, a convicted defendant may move "for a new trial based on after-discovered evidence...within a reasonable period after the discovery of the evidence." Rule 29(b), S.C.Crim.P. To be successful the party seeking the new trial based on after-discovered evidence must show that the evidence: (1) is such as would probably change the result if a new trial was had; (2) has been discovered since the trial; (3) could not by the exercise of due diligence have been discovered before the trial; (4) is material to the issue of guilty or innocense; and (5) is not merely cumulative or impeaching. Hayden v. State, 278 S.C. 610, 299 S.E.2d 854 (1983). In assessing a motion for a new trial based on after discovered evidence, the Court must assess the credibility of the new evidence. If it is not credible, the movant cannot satisfy the first prong of the above test, i.e., the evidence would probably result in a different result at the new trial. Johnson v. Catoe, 345 S.C. 389, 548 S.E.2d 587 (2001).

The PCR court found that Martinez's testimony was not credible, and, therefore, Almodovar had not shown that he would probably be found not guilty at a new trial. This conclusion is based in large part on the State's evidence from the second part of the hearing showing that Martinez's testimony regarding the duplication of the ignition key was false.

This claim fails for at least two reasons. First, Almodovar is seeking a review of a state court ruling based on a state procedural matter. Chance v. Garrison, *supra*. Second, the issue was raised in the PCR context, and alleged defects or irregularities in the PCR process cannot form the basis of habeas relief. Wright v. Angelone, *supra*.

## F.  **Brady** Violation

A due process violation occurs if the State, after a discovery request from the defendant, withholds exculpatory evidence that, if disclosed, could reasonably have altered the proceedings. Brady v. Maryland, 373 U.S. 83 (1963).  Almodovar asserts that the State failed to disclose information about other robberies which occurred about the same time in the area in which the robbers wore ski masks.  However, he has failed to specifically identify the allegedly withheld evidence and to show that it was exculpatory.

## G.  **Jury Instruction on Circumstantial Evidence**

The case against Almodovar was largely circumstantial, and the trial court gave an instruction to the jury on circumstantial evidence.  In connection with that portion of the charge, the court incorporated the following:

> One of the best examples I have heard is that assume you go into a movie, stay in the movie a couple of hours.  It's totally dry when you go in.  You return to come out of the movie and there are puddles in the street.  There is water everywhere.  It's dripping off cars and hanging off trees.

> You may from that, you may perceive, not directly, but circumstantially that it may have rained while you were in the movie.  You didn't see it rain, didn't know directly that it rained; but you can tell by the circumstances that it rained.  Again, that is one of the best examples that I have heard of that.

(App. 765-766).

Counsel took exception to the example:

> The other exception I have to what you have charged, your movie theater illustration is a good illustration; but unfortunately it does not go far enough.  The illustration that you gave in reference to going in the movie and coming out and finding puddles and you would assume it has rained is circumstantial evidence incapable of only one interpretation.

> I would request that the court go further and expound upon that and say, "now you may find out later that a water truck had come by and had created the water or

that a water pipe had burst and created the water, so there can be more than one
conclusion to be reached from circumstantial evidence.

(App. 777).

Almodovar now asserts that the court's refusal to give the expanded charge requested by
counsel denied his right to due process.

Because this issue was not raised on direct appeal, it was defaulted. Further, Almodovar has
not shown a violation of due process.

A single jury instruction must be viewed in the context of the overall charge in determining
constitutionality. <u>Gore v. Leeke</u>, 605 F.2d 741 (4th Cir. 1979), *cert. denied*, 444 U.S. 1087 (1980).
"Before a federal court may overturn a conviction resulting from a state trial..., it must be established
not merely that the instruction was undesirable, erroneous, or even 'universally condemned," but that
it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." <u>Cupp
v. Naughten</u>, 414 U.S. 141, 146 (1973). The issue on habeas review is "whether the ailing instruction
by itself so infected the entire trial that the resulting conviction violates due process. *Id.* at 147.

Under this standard, Almodovar cannot show that the refusal to give an expanded example
of circumstantial evidence violated his right to due process.

**H. Subject Matter Jurisdiction**

Almodovar asserts that the trial court lacked subject matter jurisdiction because the
indictment was not timely filed with the clerk of court pursuant to state procedure. This issue was
rejected by the PCR court. (Keesley App. 146).

The criminal jurisdiction of the Circuit Courts in South Carolina is established by Article V,
§ 11 of the South Carolina Constitution ("The Circuit Court shall be a general trial court with original
jurisdiction in ...criminal cases"). Subject matter jurisdiction is the authority of a court to hear and

23

determine cases of the general class to which the proceedings in question belong. <u>Dove v. Gold Kist, Inc.</u>, 442 S.E.2d 598 (S.C. 1994) and <u>State v. Gentry</u>, 610 S.E.2d 494, 498 (S.C. 2005). The Circuit Court gains subject matter jurisdiction in a criminal case in one of three ways: "(1) the grand jury true bills an indictment which sufficiently states the offense; (2) the defendant waives presentment in writing; or (3) the offense is a lesser included offense of a crime adequately charged in a true bill of indictment." <u>State v. Gonzales</u>, 600 S.E.2d 122, 124 (Ct. App. 2004).

A court's jurisdiction over the subject matter of a proceeding before it is fundamental. A party may raise lack of subject matter jurisdiction at any time, including on appeal for the first time. Further, the court may raise the issue *sua sponte*. Lack of subject matter jurisdiction may not be waived by the parties. <u>Brown v. State</u>, 540 S.E.2d 846 (S.C. 2001). The acts of a court which lacks subject matter jurisdiction are void. <u>State v. Funderburk</u>, 191 S.E.2d 250 (S.C. 1972).

Since a state defines the subject matter jurisdiction of its courts, a challenge on the basis of lack of subject matter jurisdiction is a quintessential question of state law. Thus, the frequently quoted maximum that a criminal defendant can raise the issue of lack of subject matter jurisdiction at any time should actually be phrased "at any time he is in state court." In other words, it is up to South Carolina courts to resolve issues as to whether or not subject matter jurisdiction exists. This court does not review determinations of state law made by South Carolina courts. *See* <u>Pulley v. Harris</u>, 465 U.S. 37 (1984) ("[A] federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law.").

### Conclusion

As discussed above, several of Almodovar's claims have been procedurally defaulted. Almodovar has not shown that the state court's rulings were contrary to or involved an unreasonable

application of constitutional principles.  It is, therefore, recommended that Respondent's motion for

summary judgment be **granted**, and the petition dismissed without an evidentiary hearing.

_____
Joseph R. McCrorey
United States Magistrate Judge

January 25,  2010
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).